**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA : | | |
| | : | **CASE NO.: 23-cr-00018(CKK)** |
| v. | : | |
| | | |
| **GABRIEL CHASE,** | : | |
| | : | |
| Defendant. | | |

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

**COMES NOW**, Attorney, **THOMAS L. EDWARDS**, representing and on behalf of **GABRIEL CHASE**, and respectfully submits this memorandum in aid of sentencing on his behalf. The Courts obligation when imposing a sentence is guided by the considerations pursuant to Title 18 U.S.C. § 3553(a) and requires the Court to impose a sentence, which is "sufficient, but not greater than necessary", to address those sentencing factors and achieve the stated goals and statutory purposes of sentencing. Undersigned counsel on behalf of Mr. Chase respectfully submits to the Court that a sentence of a twelve (12) to twenty-four (24) month probation, performance of community service hours, and payment of restitution in the amount of $500 would be consistent with the sentencing factors and goals set forth in title 18 U.S.C. § 3553(a). More specifically undersigned counsel requests this Court give great weight and consideration to:

1. Mr. Chase's immediate cooperation with the FBI and the U.S. Attorney's office as demonstrated by his proffer related to the activities of that day including his knowledge of the America First origination and its members, and specifically Nick Fuentes and his prompt notice to the Government of his willingness to plead guilty;

2. Mr. Chase's lack of planning and sophistication associated with his actions and decisions both prior to and on January 6, 2021;

3.  Mr. Chase, although illegally entering the Capitol, did not engage in any destructive or violent conduct and moved through the Capitol with the flow of the crowd peacefully, exiting in approximately under thirty (30) minutes.

Imposition of the sentence, respectfully submitted by undersigned counsel on Mr. Chase's behalf, would be "sufficient, but not greater than necessary" to achieve the sentencing factors and goals set forth pursuant to title 18 U.S.C. § 3553(a).

I.      **FACTUAL AND PRCEDUARAL BACKGROUND**

On September 20, 2022 Mr. Chase self-surrendered pursuant to an agreement with the FBI and U.S Marshalls Office requiring him to appear on a Criminal Complaint filed in U.S. District Court for the District of Columbia, charging Mr. Chase with four (4) misdemeanor offenses related to his conduct on January 6, 2021. The complaint charged the following:

Count 1:  Title 18 U.S.C. § 1752(a)(1) – Entering and Remaining in a restricted Building or Grounds;

Count 2:  Title 18 U.S.C. § 1752(a)(2) – Disorderly and Disruptive Conduct in a Restricted Building or Grounds;

Count 3: Title 40 U.S.C. § 5104(e)(2)(D) – Disorderly Conduct in a Capitol Building; and

Count 4: Title 40 U.S.C. § 1752(e)(2)(G) – Parading, Demonstrating, or Picketing in a Capitol Building

Mr. Chase surrendered to the U.S. District Court for the Northern District of Florida in Gainesville, Florida and appeared before the Honorable Gary R. Jones, United States Magistrate Judge. He was released on a personal recognizance bond with pre-trial supervision. On September 22, 2022 he was presented to this Court and was released by U.S. Magistrate Judge G. Michael Harvey, on a personal recognizance bond with standard conditions and restrictions to pre-trial supervision.

On January 17, 2023 the United States Attorney for the District of Columbia filed a single count Information charging Mr. Chase in count (1) one with: Parading, Demonstrating, or Picketing in a Capitol building, in violation of Title 40 U.S.C. § 5104(e)(2)(G).

On February 6, 2023 Mr. Chase appeared (via VTC) before this Court and U.S. District Judge Colleen Kollar-Kotelly, and this Court accepted his voluntary guilty plea as to the one (1) count Information: Title 40 U.S.C. § 5104(e)(2)(G). Pursuant to a written Rule 11 (c)(1)(B) plea agreement, Mr. Chase acknowledges that this section carries a maximum sentence of six (6) months imprisonment; a term of probation of not more than five (5) years; a fine of no more than $5,000.00; and a $10.00 special monetary assessment. Mr. Chase acknowledges that the sentence will be determined by this Court pursuant to the factors set forth in Title 18 USC § 3553(a). Mr. Chase understands that this is a Class B misdemeanor and accordingly the U.S. Sentencing Guidelines do not apply. Additionally, Mr. Chase agrees to pay $500.00 in restitution to the Architect of the Capitol.

According to the pre-sentence report and all information to date Mr. Chase is in complete compliance with all the conditions of his release.

## II.     LEGAL STANDARD; TITLE 18 USC § 3553(a) FACTORS

Title 18 USC § 3553(a) states that a Court should "impose a sentence sufficient, but not greater than necessary" to comply with the statutory purpose of sentencing and to avoid unwarranted disparity in sentences of similarly situation Defendants.

The Court is obligated to consider the nature and circumstance of the offense, the history, and characteristics of the Defendant. The Court shall also consider the need for the sentence imposed to: reflect the seriousness of the offense, promote respect for the law, and provide just punishment. This sentence should afford adequate deterrence to criminal conduct; protect the public from further crimes of the Defendant; and provide Defendant with a needed educational or vocation training, medical care, or other

correctional treatment in the most effect manner. 18 USC § 3553(a)(2)(A-D). 18 USC § 3553(a) sets forth

seven (7) factors which a sentencing Court must consider:

1. The nature and circumstances of the offense, including the history and characteristics of the Defendant;
2. The need for the sentence imposed to reflect the primary purposes of sentencing, i.e., deterrence, incapacitation, and rehabilitation;
3. The kind of sentences available;
4. The sentencing range, established through application of the sentencing guidelines, and the types of sentences available under the guidelines;
5. Any relevant "policy statements;"
6. The need to avoid unwarranted sentencing disparities among similarly situation Defendants, with similar records, who have been found guilty of similar conduct; and
7. The need to provide restitution to any victims of the offense.

### III.     NATURE AND CIRCUMSTANCES OF THE OFFENSE

When Mr. Chase entered his Plea, he stipulated to the facts outlined by the Government and submitted

to the Court as part of his plea agreement. Those facts agreed to and submitted to the Court never mention,

or even suggested that Mr. Chase engaged in any violent or destructive conduct. To the contrary, undersign

counsel, and AUSA Joseph Huyhn discussed and resolved the only ambiguous issue in the Statement of

Facts that related to a pair of headphones that were broken and lying on the ground near media equipment

that had been vandalized by other individuations. Mr. Chase picked up a pair of headphones, looked at

them, and returned them to the location from which he picked them up. During the course of his proffer

and conversations related thereto, there was never a mention or suggestion that Mr. Chase ever engaged

in violent, destructive, or threatening conduct toward any person or any Capitol police officer or possessed

any dangerous weapon, propellant or instrumentality. However, in the Government's Sentencing

Memorandum, they seem to suggest on page ten (10) with an accompanying photograph, that "at one point

it appeared a member of the group, Chase, may have attempted to spray something as well at the entrance."

There is absolutely no evidence that, nor is there any indication, that Mr. Chase possessed any propellants

or used any dangerous instrumentally while on the Capitol property or inside the Capitol on January 6, 2021.

Mr. Chase is a college student, finishing his junior year, at the University of Florida in Gainesville, Florida. He has already received his A.A. degree and is studying History and has considered applying to Law School upon graduation. On January 4, 2021, Mr. Chase traveled from Florida to Washington, D.C., in order to attend the rallies at the U.S. Capitol on January 6, 2021. When he arrived on January 4, he met with Jon Lizak (22-mj-203), Paul Lovely (23-cr-19-CKK), and Thomas Carey (22-cr-375-CKK). It was not until January 6, 2021 that this group of four (4) met with Joseph Brody (22-mj-203).

Prior to going over to the Capitol Mr. Chase had attended the rally for former President Donald J. Trump. It was not until Mr. Trump instructed the crowd to proceed to the Capitol that Mr. Chase started walking in that direction fully believing that Mr. Trump would again address the crowd from the Capitol steps. However, upon their arrival, the Capitol had already been breached, and Mr. Chase and his small group, entered the Capitol building through the open Senate Wing doors at approximately 2:16 PM. Once inside the Capitol building, they proceeded towards the Crypt. Mr. Chase followed his friends, completely unfamiliar with the layout of the Capitol, and as he stated in his proffer they moved with the flow of the crowd. Mr. Chase never entered the Senate chamber and exited the U.S. Capitol building at approximately 2:50 PM. With the exception stated above regarding the Government's memorandum, suggesting that Mr. Chase possessed and possibly sprayed a propellant, the facts recited herein are consistent with the Statement of Facts submitted to this Court in support of Mr. Chase's plea.

Mr. Chase, from the time he entered the Capitol and immediately thereafter regretted ever having attended the rally. What he experienced and witnessed that day, and the fear that he had while in the Capitol, resulted in what today Mr. Chase describes as symptoms similar to PTSD. With the clarity that sometimes only comes after such a horrific event, Mr. Chase clearly sees the error in his judgment, takes

responsibility completely for his actions, and better understands how the rhetoric from and surrounding former President Trump at that time negatively impacted him. Mr. Chase told Probation during his pre-trial interview "that he regrets having gone to D.C. that day" and that if he "knew what was going to happen that he never would have gone." Mr. Chase relayed that that "things he saw that day affected him greatly in a negative way, "and that "his memory of those incidents has made life harder for him." He believes that it was a "very negative experience", and that it "did not help anyone and it hurt the country." Mr. Chase further expressed that "I regret my part and feel bad that I contributed to what happened to law enforcement."

Mr. Chase describes meeting Lizak, Lovley, Carey, and Brody during his association with the organization America First. Mr. Chase began following America First online in 2018 or 2019. He was officially affiliated with the group from approximately December 2020 until December 2021. During which time he volunteered as a political intern. All work for the group was online and there was no physical location. Mr. Chase completely denounces America First and its self-proclaimed President Nick Fuentes. In his proffer to the Government, Mr. Chase provided substantial information related to America First, Mr. Fuentes, and the operation of the Organization. As a result of the events of January 6, and Mr. Chase's involvement he has suffered irreparable damage to his reputation, and has been the subject of a number of media accounts improperly associating him with others at the U.S. Capitol. He has also suffered online attacks via social media for "working with the government." Mr. Chase describes the January 6th riot and the fall out that resulted as the worst period of his life.

## IV.    HISTORY AND PERSONAL CHARACTERISTICS

Mr. Chase was born Gabriel Kapo Thompson on August 23, 2000 in Beverly, Massachusetts. His father age fifty-four (54) resides in New York, and his mother age fifty-four (54) resides in Gainesville, Florida. His parents divorced when he was six (6) years old and he remained in the care of his mother and

saw his father only occasionally. He has few memories of his parents living together and those memories are neither good or bad. When he was approximately ten (10) years old his father returned to live in Florida. As a result, he and his father shared a closer relationship for approximately five (5) years. Mr. Chase has two siblings. He has a twin sister, age twenty-two (22) who resides in New York. He also has a half sibling, age twelve (12), who resides with their mother in Gainesville, Florida. Mr. Chase describes his relationship with his siblings as a very close as well as having a supportive and loving relationship with his mother.

Mr. Chase reported that he changed his name from Gabriel Kapo Thompson to Gabriel Warren Chase a few years ago. He states that there was no primary reason for the change but it was something he wanted to do. Mr. Chase shares a very close relationship with Ms. Sandra Davis with whom he lives and refers to her as his grandmother, however, they are not related. As mentioned earlier, Mr. Chase is a junior in college at the University of Florida, he has no criminal history, no marital history and has no children. Mr. Chase enjoys a very supportive family environment, all of whom are aware of his current circumstances. Throughout the pendency of this case, his intimate network of family support has continued and been unflagging notwithstanding their disappointment in his actions on January 6 and his lack of good judgment and decision making as it relates to his conduct. [Please see attached letter in support of Mr. Chase as well as his personal statement to the Court].

As outlined in the pre-sentence report, Mr. Chase has a history of mental health issues related to depression and general anxiety disorder. He experienced most of his problems as a teenager which began manifesting when he was thirteen (13) years-old. At the time his relationship with his mother was conflicted and he engaged in some self-destructive behavior such as "cutting." Between the ages of thirteen (13) and fourteen (14) Mr. Chase was involuntarily hospitalized three (3) times pursuant to Florida's mental health Baker Act which allows for a 72-hour involuntary hospitalization. Those

hospitalizations were initiated by his mother, and he was provided medication and counseling. His depression and anxiety abated and by the time he was seventeen (17) years-old, he was no longer prescribed medication. Mr. Chase indicated that since his arrest in this case and the events following January 6, 2021 that day that he has had some recurrent feelings of anxiety. Mr. Chase has no history of drug abuse or of any substance use disorder and reports that he has never experimented with illegal substances.

Other than this incident, Mr. Chase has lived a law-abiding life, comported his conduct with the requirements of the law, both before and after this event. Mr. Chase has complete and utter remorse for his actions, and his understanding of how his behavior contributed to what took place on January 6 suggest that Mr. Chase would be an excellent candidate for a probationary Disposition. Additionally, his mental health issues as well as his stature, he is 5'11' tall and weighs 130 pounds, predisposes him to risks of harm associated with incarceration different from those without mental health issues and of greater physical stature. Mr. Chase also understand the seriousness of this offense and his conduct. During his proffer, Mr. Chase described the fear that he had while in the Capitol building, and in observing some of the rioters, those acting the most destructively and seemingly wanting to incite physical violence, Mr. Chase described how he felt at one point that he may not make it out of the Capitol alive, because he was certain that many individuals had firearms and that their behavior was threatening and unpredictable.

## V.    **GENERAL AND SPECIFIC DETERRENCE**

The "Rule of Law" requires adherence to the principles fundamental to the establishment and maintenance of any democratic form of Government. Violations of the law must result in consequences...fair, just, and predictable consequences. This is necessary to achieve both general and specific deterrence. The events leading up to January 6, 2021, the ensuing riot and forcible, violent breach of the Capitol on January 6 and the events after January 6 were not only historic and unprecedented in the

history of this country but they will also live in infamy. General deterrence can be achieved in a number of ways and one of the more effective ways is through consistent prosecution that also engenders widespread media coverage. Without consideration to the direction of the political winds, fair, just, deliberative, and consistent application of consequences to violations of the law applied to similarly situated defendants will result in the greatest impact on both general and specific deterrence.

Undersigned counsel respectfully suggest that general deterrence is being achieved by the process described above and that it is ongoing. As it relates to Mr. Chase, he has already suffered consequences, he has been under supervision since his arrest and demonstrated the ability to conduct himself lawfully, respectfully, and honestly. His adherence to engaging in only lawful activity, both before and subsequent to January 6 demonstrates a consistent respect for the law and legal authority. At the very least Mr. Chase will be convicted of a crime associated with one of the lowest points in this country's history. He will suffer that stigma for the rest of his life. Sixty (60) days incarceration, as suggested by the Government is unnecessary and unwarranted under the specific facts and circumstances of Mr. Chase's case. Mr. Chase has been, and continues to be, sincerely and completely remorseful. He accepted responsibility for his actions immediately and cooperated with and proffered to the Government completely and truthfully at his first opportunity and substantially assisted them with their investigation.

## VI. CONCLUSION

Mr. Chase respectfully request that this Court impose a minimum term of probation involving community service and payment of $500 in restitution as previously agreed to in his negotiated plea. For the reasons stated above Mr. chase deserves an opportunity to show this Court that he can continue to abide by the law and become a productive member of his community. Such a sentence is supported by Mr. Chase's lack of any criminal history; his complete and unequivocal acceptance of responsibility for his actions as demonstrated by his immediate cooperation with the Government's ongoing investigation;

his willingness to proffer and provide information and assistance to the Government's ongoing investigations, particularly investigations related to the America First organization, and Nick Fuentes.

Undersigned counsel submits that defendant's cooperation and proffer of information was substantial and put him at risk of various forms of retaliation. Mr. Chase understands that only the government can file a motion pursuant to section 5K 1.1 of the sentencing guidelines (pursuant to the authority and circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C § 994 (n). If the Government declines to file a motion pursuant to section 5K1.1, it does not diminish Mr. Chase's efforts to assist them in their investigations. In the alternative, if the Court believes that more punishment is warranted, then Mr. Chase would request a period of home confinement, restricting him to his home, with the exception of attending College and necessary travel for medical appointments and any other travel deemed essential by his Probation Officer.

Thank you for the opportunity to submit this memorandum in aid sentencing on Mr. Chase's behalf.

**I HEARBY CERTIFY** that a true and correct copy of the foregoing has been furnished to Assistant United States Attorney, **Joseph H. Huynh**, via **CMECF** this 23rd day of June, 2023.

Respectfully Submitted,

**Thomas L. Edwards, P.A.**
**& Christopher J. Jones**
**Attorneys at Law**

/s/ *Thomas L. Edwards*

**THOMAS L. EDWARDS**
Florida Bar Number: 0735035
4545 NW 8th Avenue
Gainesville, FL  32605
352-377-7800 (Telephone)
tome@lawfl.net
brandenw@lawfl.net

The Honorable Colleen Kollar-Kotelly

United States District Judge

United States District Court for the District of Columbia

333 Constitution Avenue, NW

Washington, D.C., 20001


Dear Judge, Kollar-Kotelly,


I deeply regret my participation in the events of January 6th. I regret my part in what it did to our nation, our democracy, and to the congresspeople and law enforcement who were present at the Capitol that day. I thank God that I had enough sense not to directly engage in violence or destruction during the riot, however, I am still aware that my actions contributed to a mob mentality that included violence and destruction which I have always believed to be unequivocally wrong and evil. If I had any clue that the events of that day would've devolved into mayhem, I never would have driven to Washington. But of course, I did, and I now must face the consequences of my actions. The fact that through my behaviors I caused fear and distress to underserving and innocent people remains a source of deep shame and regret that I will never be able to forget.

January 6th was an upsetting and harmful day for our entire nation. It is rare that our government is directly attacked in such a blatant and shameful manner. January 6th will always be remembered as an American tragedy, as it should be. It is important that we never forget the lies that caused it to happen in the first place. The lies that I was told by the then-president of the United States. But ultimately, my actions are my own. I cannot and will not ascribe blame for my actions onto anyone else.

Since that terrible day, I have experienced severe emotional turmoil. I have become increasingly reclusive. I find it difficult to be in large groups of people and hearing loud noises causes me great stress. I never had a panic attack in my life before January 6th, but now they've become an all-too-common occurrence. Often, I will stay up late, thinking about the awful feelings I had on that day. Coverage of January 6th in the news, which hasn't ceased in the two years since that day, is very triggering to me. Seeing footage from the riots affects me in worse ways than I can succinctly describe. But worse yet, I realize that it was my actions and my complicity that have given these and many more severe problems to the law enforcement officers tasked with confronting the mob. Knowing that I played a part in someone developing mental or physical maladies as a result of January 6th is sickening for me to think about.

My life was on a bad course before the events of January 6th as well. When I was still a teenager, I learned of a political group called America First. I was young and impressionable; this youthful ignorance enticed me into becoming involved with this group. This turned out to be the

first step in a cascading line of bad decisions I would continue to make throughout my teen years. It was the encouragement of this group's leader, Nicholas Fuentes, that led me to Washington D.C. on January 6th. After the events of January 6th, I became increasingly disenchanted with him and his organization. Perhaps it was age and experience that led me to the realization that this group, America First, was harmful. It was harmful for the dual reasons that it was obviously a hateful mean-spirited group that maligned my fellow Americans, but it was also a force that seems designed to ruin young men's lives in the pursuit of evil. I knew in leaving I would be subjecting myself to threats, harassment, and even the risk of harm. But after some time, I finally decided to leave. In this process I lost friends, I was isolated, and was worried about threats that I began to receive. But I knew I made the right choice. I have been separated from this group for over a year now.

Since then, I have tried to better my life. I have been there for my family, I completed my AA, and I enrolled at the University of Florida. I want to leave my past behind me, but I realize that I must atone for previous criminal behavior. I will accept whatever punishment you see fit to give me. I know I deserve it.

Some people have called me a "hero" or a "patriot" for my involvement with January 6th. But I feel the complete opposite about it. What I did was cowardly and immoral. I never want to be the person I was on that day again. I don't see myself as some type of "martyr" because that both degrades the word and is so far from what I actually am. I am someone who made the stupidest decision of my life because I was gullible enough to believe the lies of people who were using me for their own aggrandizement.

I thank you and the court for your consideration and your time. I appreciate the ability to quickly take a plea since I had no intention of fighting charges that were true and accurate. I am glad that I could assist the prosecution and law enforcement through actions I took to atone for my crime. I look forward to continuing my education and to continuing my life as a law-abiding and productive member of society.

Sincerely,

Gabriel Chase

Jessica Hurov

622 SW 23rd Place Gainesville, FL 32601

(352) 275-4180 | jessicahurov@gmail.com

June 19, 2023

Honorable Colleen Kollar-Kotelly

United States District Judge

United States Courthouse

300 Constitution Avenue, N.W.

Washington, D.C. 20001

Dear Honorable Colleen Kollar-Kotelly

I am writing this letter to you in support of my son, Gabriel Chase. I've known Gabriel his whole life and I am certain that he is an amazing young man. He has had struggles and challenges in his life, but has made me extremely proud to be his mother.

Gabriel is extremely intelligent; he has always been a good student. As a child, Gabriel struggled to make friends and connect with his peers. He was always very quiet and reserved. When Gabriel was young, he was diagnosed with depression, general anxiety disorder, and I was told by a psychologist that he had Asperger's Syndrome.

Gabriel graduated from high school after a year as a dual-enrolled college student at Santa Fe College. He later received his associate degree from Santa Fe College and is now a history major at the University of Florida. University has been a very challenging experience for Gabriel socially. He still has a hard time making friends and connecting with his peers.

He has always been a joy to have as a son. I love him deeply and only want what is best for him. He attends weekly mass at our local parish and has a strong commitment to God. I have always believed that he will do meaningful and productive things with his life. Gabriel has limitless potential. He has had to endure unique challenges that not everyone has experienced, but despite this, he has always made me extremely proud.

Gabriel is a fragile and gentle person. I ask you to please have mercy on him. I know he deeply regrets his actions and has expressed as much to me many times. Thank you for your time and consideration, if you would like to know anything else, please contact me at your convenience.

Sincerely,

Jessica Hurov

932 NW 36th Drive
Gainesville, FL 32605

June 12, 2023

To Whom It May Concern,

I am 85 years old and trying to stay alive until Gabe finishes his B.A. at the University of Florida. I am his godmother, and he is my caregiver.

I am afraid that if Gabe has to leave me alone for any length of time, I won't survive, either mentally or physically, until he returns.

Gabe has had a difficult family life.  Please be merciful.

Respectfully yours,

*Sandra C. Davis*

Dr. Sandra Cox Davis